**THE MIRVIS LAW FIRM, P.C.**

November 19, 2022

**VIA ECF**
Hon. Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   **United States v. Taras Bevz**
       **21-CR-618-NRB**

Honorable Judge Buchwald:

This memorandum is submitted on behalf of Mr. Taras Bevz, who is scheduled to be sentenced before Your Honor on December 1, 2022, at 3:00 p.m. It is respectfully requested that your Honor impose a sentence of time served which would be sufficient but not greater necessary to serve the purposes of 18 U.S.C. 3553(a) (hereinafter referred to as "§3553(a)") This sentence is warranted based of Mr. Bevz's conduct in the offense and his rehabilitation during his incarceration[1]. His incarceration has met the standard of punishment that is sufficient to deter both society and Mr. Bevz from future transgressions. Keeping Mr. Bevz incarcerated any longer is greater than necessary to serve the goals of §3553(a). This sentencing request is made based on the history and characteristics of Mr. Bevz, the nature of the offense and Mr. Bevz's role in the offense.

---

[1] On the date of sentencing, Mr. Bevz will be incarcerated for 431 days. One year, 2 months and 5 days.

**THE MIRVIS LAW FIRM, P.C.**

I. **INTRODUCTION**

Mr. Bevz is a fairly young man with no prior criminal convictions or contacts with law enforcement. In November of 2019, three years ago, he made a decision that haunts him to this day. Mr. Bevz has learned his lesson and respectfully requests the Court sentence him to time served. His arrest and subsequent incarceration is sufficient but not greater than necessary to me the criteria of §3553(a).

II. **MR. BEVZ CONDUCT AND ROLE**

Taras Bevz was arrested in this matter on September 27, 2021, and charged with Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). On June 16, 2022, Mr. Bevz appeared before your Honor and pled guilty to Count 2 of his Indictment pursuant to a plea agreement. Mr. Bevz admitted that he agreed with others to open multiple bank accounts in Manhattan, to receive funds which were obtained illegally, and to then pass the funds to others to make the funds appear legal. A total of $1,044,924 was transferred into accounts Mr. Bevz was responsible and accountable for[2]. Mr. Bevz was paid on average approximately 7% - 10% of each transaction. Mr. Bevz did not speak to any of the victims directly. Mr. Bevz's criminal conduct began after the money was stolen.

---

[2] $786,034 was transferred into accounts opened by Bevz. $258,890 was transferred into accounts opened by CC-2. Mr. Bevz provided CC-1 with instructions as to what to do with the funds

**THE MIRVIS LAW FIRM, P.C.**

Mr. Bevz is also accountable as a manager or supervisor of one other individual (CC-1). Mr. Bevz received instructions from a third person (CC-2) regarding where CC-1 should open bank accounts and the name of the company CC-1 should use for the new bank accounts. CC-2 would provide Mr. Bevz with information regarding incoming bank transfers and what CC-1 should do with the funds. Mr. Bevz would relay the information to CC-1. Mr. Bevz served as a buffer between CC-1 and CC-2, and he communicated CC-2's instructions to CC-1. Although Mr. Bevz acknowledges that his conduct falls within the Guidelines definition of a manager or supervisor pursuant to U.S.S.G. § 3B1.1(c), he did not exercise decision making authority. Mr. Bevz told CC-1 what CC-2 told Mr. Bevz to tell CC-1.

Mr. Bevz accepts responsibility for his wrongdoing and is remorseful for his conduct. The information above is not meant to minimize Mr. Bevz's conduct but rather to notify the Court of Mr. Bevz's actual conduct. He knows that his actions were criminal and dishonest and that he must be punished for them. He is deeply sorry for his actions and looks forward to expressing his remorse to Your Honor at sentencing. He recognizes that he has devastated his loving family with his conduct and that his actions have placed him and his freedom in great peril. He also realizes that his conduct has taken his control over his own life and liberty out of his hands and placed it firmly in the Courts hands.

**II.     PROBATION'S GUIDELINE CALCULATION - PSR**

Mr. Bevz entered into a plea agreement wherein the stipulated Guideline offense level is 23. The Department of Probation also calculated the Guideline offense level to be 23. The plea agreement and the PSR calculate the Guidelines as follows:

**THE MIRVIS LAW FIRM, P.C.**

1. The guideline for a violation of 18 U.S.C. § 1956(a)(1)(B)(i) is USSG §2S1.1. According to §2S1.1(a)(2), the base offense level is determined by adding **eight (8)** levels to the number of offense levels from the loss table in §2B1.1, which corresponds to the value of the laundered funds. Because the laundered funds amounted to $1,044,924, a **14-level** increase is warranted, pursuant to §2B1.1(b)(1)(H). Therefore, the base offense level is 22. USSG §§2S1.1(a)(2) and 2B1.1(b)(1)(H). **22**

2. The defendant was convicted under 18 U.S.C. § 1956, therefore, the offense level is increased by 2 levels. USSG 2S1.1(b)(2)(B). **Plus 2 = 24**

3. Bevz also acted as a manager or supervisor of at least one other individual who similarly opened bank accounts and transacted with proceeds from the vehicle fraud scheme ("CC-1"). USSG §3B1.1(c). **Plus 2 = 26**

4. Mr. Bevz clearly accepted responsibility for the offense and he accepted responsibility in a timely fashion, therefore the offense level is decreased by three levels. USSG §3E1.1(a), USSG §3E1.1(b). **Minus 3 = 23**

The driving factor of the Guideline calculation is the 14 level increase based on the loss amount. While Mr. Bevz actual earnings do not factor into the Guideline calculation, it is important for the Court to understand that Mr. Bevz earned between 7% to 10% for his conduct in the scheme. The Guideline calculation is increased by 14 levels because the Guidelines require that Mr. Bevz be held accountable for the reasonably foreseeable loss his conduct causes. The difference between level 23 (46-57) and level 17[3] (24-30) is tremendous.

---

[3] The Guideline level would be reduced by 6 levels if Mr. Bevz Guideline calculation was done using what he actually earned from the scheme.

**THE MIRVIS LAW FIRM, P.C.**

### III. MR. BEVZ'S HISTORY

Mr. Bevz is 33 years old man whose life was going in the right direction up until November of 2019, where he got involved in this money laundering conspiracy. He has a loving family that continues to support him from Russia. Mr. Bevz is married to Valeria Hurtima and during the course of his incarceration he realized how important she is to him and that he wants nothing more than to start a family upon his return. Mr. Bevz obtained a bachelor's degree in the field of law in 2010 while in Russia. (PSR 60). Upon completing his bachelor's degree, in 2011, he completed one year of mandatory service in the Russian military for the peacekeeping brigade. (PSR ¶ 62).

Mr. Bevz owned and operated a company in Russia from 2014 to 2019. His company served as a broker for construction machinery rentals. Mr. Bevz was able to support himself and his wife with the income he earned from his company. He was also able to help his mother out whenever she need the help. (PSR ¶ 63).

Mr. Bevz respectfully submits the following letters for your Honor's review to assist your Honor in fashioning an appropriate sentence for Mr. Bevz:

1. Taras Bevz – Defendant
2. Natalia Kameneva – Mother
3. Valeria Bevz – Wife
4. Alexei Koshcheev – Best Friend
5. Alexandra Gordienova – Close Friend
6. Iuliia Kolesnik – Friend of Many Years

**THE MIRVIS LAW FIRM, P.C.**

### IV. MR. BEVZ'S SENTENCE MUST ACHIEVE THE PURPOSES OF SENTENCING UNDER 18 U.S.C. § 3553

#### A) Sentencing Law after *Booker*

As first stated in <u>United States v. Booker</u>, 543 U.S. 220, 245, 125 S. Ct. 738 (2005), and further clarified in <u>Gall v. United States</u>, 552 U.S. 38, 128 S. Ct. 586 (2007) and <u>Kimbrough v. United States,</u> 552 U.S. 85, 128 S. Ct.558, 564 (2007), the Sentencing Guidelines are merely advisory and are not the court's only consideration in sentencing. Instead, the court must consider all the purposes of sentencing under § 3553 and the Guidelines calculation is just one of seven factors specified in §3553(a) that a sentencing court must consider. The factors listed in § 3553 include: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to provide restitution to any victims of the offense; and (6) the need to avoid unwarranted sentence disparities among similarly situated defendants. See <u>18 U.S.C. § 3553(a)(1) and (a)(3)-(7)</u>.

Finally, after considering all of these factors, the sentencing court must impose a sentence "sufficient, but not greater than necessary," to achieve the following four purposes set forth in the Act:

> (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (2) to afford adequate deterrence to criminal conduct;
>
> (3) to protect the public from further crimes of the defendant; and
>
> (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

**THE MIRVIS LAW FIRM, P.C.**

See §3553(a) and (a)(2). Further, a sentence within the Guideline range is not presumed to be correct under §3553(a). *See id.* at 27 ("We … decline to establish any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable"). If the Guidelines sentence is higher than necessary to achieve these goals, then it may not be imposed. *See Kimbrough*, 128 S. Ct. at 558.

**V. APPLICABLE VARIANCES FROM THE ADVISORY GUIDELINES**

For Sentencing purposes the Court must calculate Mr. Bevz's advisory guideline range and use it as one of the §3553(a) factors, it is submitted that he should receive a variance based on the following factors:

1) Actual conduct in the offense, 2) Actual earning are equal to less than 10% of the loss amount he is being held accountable for, 2) Current length of incarceration in the MDC which on the date of sentencing will be 431 days[4], 3) his rehabilitation while in custody[5], 4) Likelihood that he will be held by immigration authorities when his federal criminal sentence ends, 5) Mr. Bevz cannot return to this Country and his Country is in terrible condition, and 6) Live with the stigma of being a convicted felon.

### A) Mr. Bevz's Limited Role

Although Mr. Bevz is being held accountable as a supervisor or manager, he was really nothing more than an interchangeable cog in a much larger machine. If it was not him walking into the bank then it would have been someone else. Mr. Bevz was lured into the criminal conspiracy

---

[4] 431 days = 1 year, 2 months, and 5 days in the Brooklyn MDC. Mr. Bevz is being held with pretrial defendants that are charged with very serious violent crimes as well as gang members. Further COVID has made incarceration very difficult by requiring constant periods of quarantine and lockdowns.
[5] From the date of his arrest through the date of sentencing Mr. Bevz has not had one disciplinary infraction in the Metropolitan Correction Center

**THE MIRVIS LAW FIRM, P.C.**

through a false advertisement for a job. Mr. Bevz was told which banks to go to and what type of accounts to open. He used his own identification with his correct name to open accounts in banks that would subsequently be used to receive proceeds of criminal conduct. After the banks accounts were opened, Mr. Bevz was told which bank to go to, when to go to the bank and the specific dollar amount he needed to withdraw and/or wire and to whom the funds had to be sent. Mr. Bevz was paid approximately seven to ten percent of the dollar amount that came into his accounts. Mr. Bevz had absolutely no decision making authority in this criminal scheme. His recruiter/supervisor told him to jump, and Mr. Bevz was left asking how high. When law enforcement discovered this scheme, Mr. Bevz was left holding the bag and fully accountable for loss the victims suffered. Mr. Bevz's recruiter/supervisor got to walk away completely untouched by law enforcement.

### B) Mr. Bevz's current Incarceration

Mr. Bevz had a normal childhood and has a loving family. This arrest, prosecution and incarceration, thousands of miles from his family and friends has been the most difficult thing he has had to deal with in his young life. He prays of your Honor to enable him to get back onto the road of life. His punishment thus far is sufficient to deter society from engaging in similar acts.

Thus, a variance is appropriate because Mr. Bevz's punishment has met the goals of §3553(a).

### C) Mr. Bevz's Substantial Punishment

Mr. Bevz has been in custody in the Brooklyn MDC since September 27, 2021. Mr. Bevz is being held with pretrial defendants that are charged with very serious violent crimes as well as gang members. Further COVID has made incarceration very difficult by requiring constant periods of quarantine and lockdowns.

**THE MIRVIS LAW FIRM, P.C.**

Mr. Bevz will be taken into immigration custody once he is released from his criminal sentence. He will go from one jail to another to await his inevitable deportation. He will be adjudicated a felon and barred from this Country for at least ten years, if not longer.

### D) Mr. Bevz's Sentence Must Not Be Greater Than Necessary

It is respectfully submitted that a sentence of time served (431 days) satisfies the purposes of sentencing under § 3553(a) and that a sentence of further incarceration would be greater than necessary to serve the purposes of sentencing under §3553(a). Mr. Bevz's crime was serious, but the nature and circumstances show that this crime was committed haphazardly. Mr. Bevz was a mule in the United States whose job was to go into a bank with his own identifying information and withdraw money at the behest of his recruiter/supervisor. Although the scheme as a whole may be sophisticated Mr. Bevz's role was not.

Mr. Bevz has no prior convictions and has shown the ability to live a positive life both before the instant offense and through his conduct while incarcerated. He has availed himself of various educational opportunities while incarcerated. (PSR ¶ 7). A sentence of time served would provide adequate general and specific deterrence to criminal conduct and protect the public from any further crimes by Mr. Bevz. A sentence of time served would also permit Mr. Bevz to see his family and enjoy the emotional support that so many take for granted. He will be able to start to put the pieces of his life back and be able to continue with his rehabilitation. See _United States v. Dauria_, 2008 WL 5459197, *2 (E.D.N.Y. Nov. 24, 2008) (ordering probation where a "period of incarceration would hamper her ability to move forward in pursuit of her educational, career and parenting goals.").



**THE MIRVIS LAW FIRM, P.C.**

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that a sentence of time served is sufficient but not greater than necessary to serve the goals of 3553(a). As such, Mr. Bevz respectfully requests this Court sentence him to time served.

**Respectfully submitted,**

*Tony Mirvis*

Tony Mirvis, Esq.
Attorney for Defendant
The Mirvis Law Firm, P.C.
28 Dooley Street, 3rd Fl.
Brooklyn, NY 11235
(718) 934-4141 (Tel.)
(718) 228-8408 (Fax)
Mirvis.tony@gmail.com